# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KEITH SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 18 C 4918 |
| v. ) | |
| ) | Hon. Virginia M. Kendall |
| CITY OF CHICAGO, OFFICER ) | |
| RANITA MITCHELL, and OFFICER ) | |
| HERMAN OTERO, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Keith Smith sued the City of Chicago and two Chicago Police Officers—Defendants Ranita Mitchell and Herman Otero—under 42 U.S.C. § 1983 alleging constitutional violations from his September 2013 arrest, detention, and the legal proceedings that followed. (Dkt. 1). Defendants seek for a more definite statement under Federal Rule of Civil Procedure 12(e) and have moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). (Dkt. 16). For the reasons explained below, Defendants' Motion for a More Definite Statement is denied and their Motion to Dismiss is granted.

## BACKGROUND

The following facts are taken from Smith's Complaint and are presumed true for the purpose of reviewing the Motion to Dismiss. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). While Smith was riding as a passenger in a vehicle on September 10, 2013, Officers Mitchell and Otero stopped the vehicle, searched it, and arrested Smith. (Dkt. 1) at ¶ 5. (Smith does not bring any claims for unlawful search, seizure, or false arrest.) Afterwards, Officers Mitchell and Otero decided to frame Smith "for criminal offenses to cover up their wrongful conduct." *Id*. at ¶ 6. Specifically, they created the false story

1

that Smith had made a "furtive movement" in the car and that they found a bullet in the car. *Id.* at ¶¶ 6–8. Another reason that the officers created the false story and fabricated evidence was to act in line with the "code of silence" among Chicago Police Officers. *Id.* at ¶ 12. Smith alleges that the City knew of and encouraged the "code of silence," which acted as a way to cover up police misconduct. *Id.* He alleges that the "'code of silence' was another cause of the conduct of Defendants Mitchell and Otero because they acted pursuant to the 'code of silence' when they concocted their false story and fabricated evidence." *Id.* at ¶ 15. Officers Mitchell and Otero thereafter made official reports and statements to prosecutors that contained their false story. As a result, Smith was detained at the Cook County Jail until he was released on bond in March 2014. *Id.* at ¶ 10. Smith's case eventually went to trial in July 2016 and he was "exonerated." *Id.* at ¶ 11. Smith has brought this suit alleging that the Defendants' actions violated his Fourth and Fourteenth Amendment rights. *Id.* at ¶ 16.

## **LEGAL STANDARD**

A motion for a more definite statement is appropriate if a pleading "is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Fed. R. Civ. P. 12(e). Upon a motion that points to the purported defects and the details desired, the court may order the filing of a more definite statement. In considering such a motion, a court should be mindful of the liberal pleading requirements of the Federal Rules of Civil Procedure, pursuant to which a "short and plain statement of the claim" will suffice. Fed. R. Civ. P. 8(a)(2). Rule 12(e) is intended to strike "unintelligibility rather than want of detail." *Mission Measurement Corp. v. Blackbaud, Inc.*, 216 F. Supp. 3d 915, 917 (N.D. Ill. 2016) (citation omitted).

A Rule 12(b)(6) motion challenges the legal sufficiency of the complaint. In evaluating a Rule 12(b)(6) motion, the Court "'accept[s] as true all of the well-pleaded facts in the complaint

and draw all reasonable inferences in favor of the plaintiff.'" *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017) (quoting *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016)). To survive a motion to dismiss, a plaintiff's complaint must allege facts which, when taken as true, "'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Ill. State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007)). While specific facts are unnecessary, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court reads the complaint and assesses its plausibility as a whole. *See Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

## ANALYSIS

**I.     Motion for More Definite Statement**

Defendants first request that the Court dismiss the Complaint and order Smith to file an amended complaint that pleads all of his claims in separate counts. (Dkt. 17) at 3–4. But "[a]lthough it is common to draft complaints with multiple counts, each of which specifies a single statute or legal rule, nothing in the Rules of Civil Procedure requires this." *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir. 1992) (emphasis added). That is, the Rules do not forbid the plaintiff to include multiple legal claims in a single count. Indeed, under Rule 8(d)(2) parties may state alternate or inconsistent claims in a single count. Although Smith has not explicitly noted all of the claims contained in his Complaint with headings and other signifying language or format, his Complaint unambiguously brings claims for being wrongfully detained by way of Defendants' actions. In addition, Smith explicitly states that his Complaint does not bring any claims for unlawful search, seizure, or arrest. With this groundwork in place, Smith's Complaint is at least

3

comprehensible and not so vague or ambiguous as to preclude a reasonable response, as is already indicated by Defendants' Answers (Dkts. 28, 29) and Motion to Dismiss. (Dkts. 16, 17). The Complaint does not violate the Federal Rules of Civil Procedure.

## II. Motion to Dismiss

Section 1983 provides an avenue for vindicating federal rights impaired by state actors, but since it does not create any substantive rights in and of itself, a plaintiff must first identify the underlying constitutional right at issue. *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997); *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Here, Smith raises Fourth and Fourteenth Amendment claims on account of the Officers' action of fabricating evidence (that is, the false narrative about the furtive movement and observed bullet), which caused him to be wrongfully detained.

A plaintiff who claims that the government has unconstitutionally imprisoned him has at least two potential claims. As established in *Manuel v. City of Joliet*, 137 S. Ct. 911 (2017), a person has a Fourth Amendment right not to be detained based solely on false evidence rather than probable cause. That right extends not just to the time a person spends detained prior to the commencement of legal process (*i.e.*, arraignment) but also to his post-legal-process pretrial detention—"when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements." *Id*. at 918–20. At some point after arrest and certainly by the time of trial, "the Fourth Amendment drops out: A person challenging the sufficiency of the evidence to support both a conviction and any ensuing incarceration does so under the Due Process Clause of the Fourteenth Amendment." *Id*. at 920 n.8; U.S. Const. amend. XIV, § 1 ("No State shall . . . deprive any person of life, liberty, or property, without due process of law."). Because the Complaint generally states that Defendants violated Smith's Fourth and Fourteenth

4

Amendment rights by way of the single harm of detention and because it fails to contain any allegations regarding the legal process provided on Smith's case or that would otherwise allow for delineation between these two claims, the Court will analyze them together. Although, notably, as currently alleged and for reasons discussed below, Smith's claims appear to arise under the Fourth Amendment.

### A. Fourth and Fourteenth Amendment Claim for Wrongful Detention

Defendants move to dismiss Smith's wrongful detention claim for two reasons: state law offers an adequate remedy to Smith on his claim, which is essentially one for malicious prosecution; and the claim is time-barred. (Dkt. 17) at 4–9. The Court addresses each argument in turn.

#### 1. Legal Viability of the Claim

It is well-established that a violation of state law does not preclude a finding that the federal Constitution has also been violated. *Armstrong v. Daily*, 786 F.3d 529, 542 (7th Cir. 2015). Defendants' argument that Smith's claim is merely an improperly re-cast state-law claim for malicious prosecution is based primarily on the Seventh Circuit's decision in *Newsome v. McCabe*, 256 F.3d 747 (7th Cir. 2001) and its progeny. *See* (Dkt. 17) at 4–6; *Brooks v. City of Chicago*, 564 F.3d 830 (7th Cir. 2009); *Fox v. Hayes*, 600 F.3d 819 (7th Cir. 2010). For example, *Newsome* involved a § 1983 claim brought by a man who had served 15 years in prison for a murder he did not commit. He sued five Chicago Police Department officers, including two that he alleged, among other things, failed to disclose that they fabricated evidence by coaching witnesses to select the plaintiff's picture from a lineup despite their earlier identifications from a book of mug shots that did not contain his photo. *Newsome*, 256 F.3d at 749. The plaintiff brought a federal due process claim sounding in malicious prosecution against the officers for their failure to halt his

criminal prosecution. *Id*. But the Seventh Circuit held that there was no federal constitutional tort for malicious prosecution when such a claim existed under the relevant state law. *Id*. at 750. Notably, the plaintiff in *Newsome* was unable to bring a claim against the officers for unlawful arrest and detention. *Id*. at 749; *see Brooks*, 564 F.3d at 833 (alleged deprivation "of fair criminal proceedings" by way of fabricated evidence and other things did not state a due process claim).

Since *Newsome*, however, the Seventh Circuit has clarified that although there is no "free-standing constitutional tort of malicious prosecution, [] there are other constitutional rights (*e.g.*, such as those under the Due Process Clause and the Fourth Amendment) that protect people against abusive arrests, fabrication of evidence, etc." *Hurt v. Wise*, 880 F.3d 831, 843 (7th Cir. 2018); *see also Serino v. Hensley*, 735 F.3d 588, 593 (7th Cir. 2013) ("[T]here is no such thing as a constitutional right not to be prosecuted without probable cause. Thus, [a plaintiff] must allege something else that does amount to a constitutional violation (even if he calls it malicious prosecution)."). "Wrongful arrest or detention creates a wrongful-seizure claim, plain and simple, and the constitutional objection is to wrongful custody rather than to a criminal prosecution." *Stone v. Wright*, 734 F. App'x 989 (7th Cir. 2018) (citing *Manuel v. Joliet*, — U.S. —, 137 S. Ct. 911, 917–20 (2017)). In other words, "the wrong is the detention rather than the existence of criminal charges." *Manuel v. City of Joliet, Ill.*, 903 F.3d 667, 670 (7th Cir. 2018).

Accordingly, a claim for unlawful pretrial detention based on fabricated evidence appropriately may be brought pursuant to the Fourth Amendment, *see Manuel*, 137 S. Ct. at 917; it may also "may state a colorable due-process claim." *Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016); *see Armstrong*, 786 F.3d at 551 (citing *Zahrey v. Coffey*, 221 F.3d 342, 349 (2d Cir. 2000) (defining the right at issue as "the right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity")); *Petty v. City*

6

*of Chicago*, 754 F.3d 416, 422 (7th Cir. 2014) (recognizing that manufactured evidence is capable of violating a defendant's due process rights); *see also Carter v. City of Chicago*, 2018 WL 1726421, at *4 (N.D. Ill. Apr. 10, 2018) ("There can be no doubt that the use of fabricated evidence to deprive a defendant of liberty violates the Fourteenth Amendment."). "[A] police officer who manufactures false evidence against the criminal defendant violates due process if that evidence is later used to deprive the defendant of her liberty in some way." *Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012); *see also Hurt*, 880 F.3d at 844 (this type of due process claim can be based on false police reports).

That is exactly what Smith has alleged here: he was wrongfully detained in custody for seven months and on bond for more than two years awaiting trial on account of the arresting officers' fabricated reports. *See* (Dkt. 1) at ¶ 10; *see also* (Dkt. 21) at 5 ("Plaintiff also alleges a deprivation of liberty: he was held at the Cook County Jail for seven months . . . and then remained subject to the conditions of bond until he was exonerated at trial."). He does not simply complain about being prosecuted; in fact, his Complaint does not mention his trial or even the charges that were brought against him. *See generally* (Dkt. 1). Therefore, his claim is not a disguised state-law malicious prosecution claim. Accordingly, Smith's claim for continued detention for seven months following his arrest based on fabricated or false evidence appropriately may support a claim under the Fourth or Fourteenth Amendment. *Manuel*, 137 S. Ct. at 918–20; *Avery v. City of Milwaukee*, 847 F.3d 433, 439 (7th Cir. 2017) (Due Process Clause forbids the state from depriving a person of liberty (including by pre-trial detention) based on manufactured evidence); *see also Saunders-El v. Rhode*, 778 F.3d 556, 560 (7th Cir. 2015) (explaining that *Newsome*, *Fox*, and *Brooks* confirmed only that malicious prosecution claims—that is, claims premised on the initiation of criminal proceedings without probable cause—could not be pursued under § 1983

7

where state law provides a tort remedy; due process claims premised on post-arrest deprivations of liberty are a different animal and "[n]one of these decisions—individually or as a collection—stands for the proposition that fabricating evidence does not violate a defendant's due process, actionable pursuant to § 1983"); *see also Myvett v. Heerdt*, 232 F. Supp. 3d 1005, 1019 (N.D. Ill. 2017) ("[A] due process claim will lie when fabricated evidence is used to deprive a criminal defendant of liberty, even when the prosecution of that defendant is ultimately unsuccessful.").

However, the more than two years that Smith spent on pre-trial release on bond presents a different analysis. Smith argues in his Response Brief that he remained in wrongful custody or seized while on bond (*see* (Dkt. 21) at 7), but his Complaint does not contain any allegations concerning constitutional deprivations endured by Smith while on bond and the caselaw he cites in support of this premise is from other Courts of Appeals and therefore not precedential. To the contrary, the Seventh Circuit has said on multiple occasions that a criminal defendant who is released on bond and later acquitted at trial does not suffer a liberty deprivation for purposes of alleging a claim under the due process clause of the Fourteenth Amendment. *See Cairel v. Alderden*, 821 F.3d 823, 831 (7th Cir. 2016) (plaintiffs' evidence-fabrication due process claims foreclosed by the fact that plaintiffs "were quickly released on bond following their arrests"); *Bianchi*, 818 F.3d at 316, 320 (7th Cir. 2016) (plaintiffs "suffered no liberty deprivation . . . [and therefore] no due-process violation" because they "were arrested and immediately released on bond"); *Saunders-El*, 778 F.3d at 561 ("Saunders-El, released on bond following his arrest and acquitted at trial, . . . cannot make out an evidence fabrication-based due process violation."); *Alexander v. McKinney*, 692 F.3d 553, 557 (7th Cir. 2012) (holding that the manufacturing of false evidence resulting in the plaintiff's arrest and charges being brought against him did not deprive him of a liberty interest because he was released on bond and later acquitted at trial; distinguishing

pre-trial release on bond, which is not a deprivation of liberty, from pre-trial confinement, which is). Simply put, "even when the prosecution uses fabricated evidence at trial, the defendant's due process claim is wiped away if he is released on bond and then acquitted." *Holmes v. Curran*, 2018 WL 2933648, at *2 (N.D. Ill. June 12, 2018). This is because "the need to appear in court and attend trial does not constitute such a deprivation" of liberty. *Cairel*, 821 F.3d at 831; *see also Alexander*, 692 F.3d at 557 n.2 ("It would be anomalous to hold that attending a trial deprives a criminal defendant of liberty without due process of law, when the purpose of trial is the *effectuate* due process.") (emphasis in original).

This same logic applies with equal force to Smith's Fourth Amendment continuing-seizure theory, particularly in the absence of any allegations whatsoever regarding Smith's conditions of bond. *See, e.g.*, *Townsend v. Wilson*, 652 F. App'x 449, 453 (7th Cir. 2016) ("because Townsend was released on bond the morning after his arrest and was not detained after charges were filed, he did not suffer a Fourth Amendment injury that would support a claim of malicious prosecution"); *Alexander*, 692 F.3d 553, 557 n.2 ("run-of-the-mill conditions of pretrial release . . . do not constitute Fourth Amendment seizure") (quoting *Harrington v. City of Nashua*, 610 F.3d 24, 32–33 (1st Cir. 2010)); *cf. Banton v. Dowds*, 2007 WL 2772515, at *11 (C.D. Ill. Sept. 19, 2007) (leaving open the possibility that certain bond conditions may be so restrictive that they constitute a "seizure" under the Fourth Amendment, but concluding that the allegations in that case did not rise to such a level). In sum, the Court concludes that the only wrong at issue for purposes of Smith's wrongful detention claim is the seven months he spent at the Cook County Jail.

### 2. Timeliness

Defendants' second dismissal argument is that Smith's claim is untimely. Because § 1983 does not contain a statute of limitations, the court looks to the law of the state where the injury

occurs to determine the appropriate limitations period. In Illinois, the limitations period is two years. 735 ILCS 5/13-202. In addition, federal law governs accrual questions. *Johnson v. Winstead*, 900 F.3d 428, 434 (7th Cir. 2018). Generally, a § 1983 claim begins to accrue when the plaintiff has a "complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (citation and quotation omitted).[1]

Smith filed the instant action on July 18, 2018, meaning that his claim in untimely if it accrued before July 18, 2016. The Complaint allegations make clear that only one event occurred within the applicable timeframe: Smith's July 21, 2016 exoneration at trial—the date the criminal proceedings were terminated in his favor. (Dkt. 1) at ¶ 11. Instead of using that date as the accrual date, Defendants allege that Smith's evidence fabrication claim accrued on September 10, 2013, when he was arrested. *See* (Dkt. 17) at 7. Because Smith is challenging his prolonged detention based on the allegedly fabricated evidence, Defendants' theory of accrual is plainly incorrect. However, as discussed above, Smith's challenge applies only to the time he actually spent in custody, not to the two years he was on bond. What the cases cited above indicate then is that Smith's claim of wrongful detention accrued at the time his custodial detention ceased. In other words, he properly alleges that the fabricated evidence caused him a constitutional harm insofar as it caused him to be wrongfully detained. He does not (and cannot) properly allege that it caused him any constitutional harm at trial, where he was not convicted. The wrong is his detention and

---

[1] Under *Heck v. Humphrey*, a claim that implies the invalidity of a conviction does not accrue until the conviction has been invalidated. 512 U.S. 477, 486–87 (1994). Thus, under *Heck*'s deferred accrual rule, the statute of limitations is tolled for a *Heck*-barred claim until the conviction has been set aside. *See Moore v. Burge*, 771 F.3d 444, 446 (7th Cir. 2014) ("*Heck* holds that a claim that implies the invalidity of a criminal conviction does not accrue, and the statute of limitations does not begin to run, until the conviction is set aside by the judiciary or the defendant receives a pardon."). The *Heck* rule of deferred accrual comes into play only when a conviction or sentence is outstanding. *Wallace*, 549 U.S. at 393. Since the Complaint is clear that Smith was never convicted or sentenced, the *Heck* rule of deferred accrual is inapplicable in this case.

as Smith argues, "the majority rule is that the claim does not accrue until the wrong ceases." (Dkt. 21) at 6. The wrong ceased when Smith was released from the Cook County Jail on bond in March 2014. (Dkt. 1) at ¶ 10. Therefore, he needed to bring this action by March 2016 for it to be considered timely. But Smith filed this action on July 18, 2018, more than four years after the clock began to run on his claim, so it is time-barred.

Smith attempts to save his claim by arguing that a fabrication of evidence claim accrues on the "favorable termination" of criminal proceedings—the July 21, 2016 exoneration date within the limitations period. *See* (Dkt. 21) at 5–6 (citing *Floyd v. Attorney General*, 722 F. App'x 112, 114 (3d Cir. 2018) (*per curiam*); *Castellano v. Fragozo*, 352 F.3d 939, 959–960 (5th Cir. 2003) (*en banc*); *Mills v. Barnard*, 869 F.3d 473, 484 (6th Cir. 2017); *Bradford v. Scherschligt*, 803 F.3d 382, 387–389 (9th Cir. 2015); *Mondragon v. Thompson*, 519 F.3d 1078, 1083 (10th Cir. 2008)). But Smith's argument is inconsistent with the Seventh Circuit's recent holding in *Manuel v. City of Joliet, Ill*. regarding the Fourth Amendment claim presented there. As relevant, in *Manuel*, the plaintiff was ordered to remain in custody pending trial. On May 4, 2011 while he was still in custody, the charges against him were dismissed; he was released from detention the following day, May 5, 2011. 903 F.3d at 669. The parties litigated the accrual issue before the Supreme Court, where the plaintiff argued that the Fourth Amendment claim accrues "only upon the dismissal of criminal charges." *Manuel*, 137 S. Ct. at 921. In contrast, the City argued that any Fourth Amendment claim accrues on the date of the initiation of legal process. *Id*. The Supreme Court declined to decide the issue, although in so declining, the Court noted that "all but two of the ten Courts of Appeals that have recognized a Fourth Amendment claim like his have incorporated a 'favorable termination' element and so pegged the statute of limitations to the dismissal of the criminal case." *Id*. On remand, the Seventh Circuit explicitly refused to use May

11

4—the day the charges were dismissed or the date of "favorable termination"—as the accrual date, because the Supreme Court had "deprecated the analogy [of the Fourth Amendment claim] to malicious prosecution." *Manuel*, 903 F.3d at 670. Instead, the Seventh Circuit held that "[b]ecause the wrong is the detention rather than the existence of criminal charges, the period of limitations also should depend on the dates of the detention." *Id*. Thus, Manuel's claim accrued on May 5.

The distinction drawn in *Manuel* between the date the detention ceased and the date of favorable determination made little difference on the facts of that case, but here it is the difference between a timely and an untimely claim. Smith was detained for seven months and then released on bond pending trial, and his criminal charges were not resolved until more than two years after his release from custodial detention. Following the Seventh Circuit's directive, the Court finds that the constitutional claim presented by Smith here—under either the Fourth or Fourteenth Amendment—accrued when his detention ended in March 2014. Not only does this result follow the applicable precedent, it makes sense because Smith has not alleged that any of the fabricated evidence was used at trial or for purposes other than securing his pre-trial detention. And again, to the extent Smith complains that such evidence generally was used to prosecute him, as explained above, such a claim is not tied to a constitutional harm and therefore cannot be framed as a Fourth or Fourteenth Amendment claim. To be fair, filing suit within the limitations period could have put Smith in an awkward situation if the allegedly fabricated evidence used to justify his detention also was trial evidence (but again, that is not alleged here). Still, although an earlier brought case may have been stayed, Smith's constitutional claim for unlawful detention accrued upon his release in March 2014. To hold otherwise would inappropriately cross the line into creating a constitutional tort for malicious prosecution. To the extent that Smith had or has a state-law

malicious prosecution claim, which he has not raised here, he is correct that any such claim accrued upon his acquittal.

Finally, Smith mentions a pending appeal in *Lewis v. City of Chicago*, No. 17-1510 (7th Cir.), which involves the accrual of Fourteenth Amendment evidence fabrication claims. But a ruling has not yet been issued in that case, and the Court instead follows the available and applicable precedent of *Manuel*. Regardless, the position advocated for by the appellant in that case is the same as applied here: "The accrual rule the Court applied to the Fourth Amendment claim in *Manuel* is fully applicable to appellant's Fourteenth Amendment Due Process Clause claim that he was deprived of liberty based on fabricated evidence. Like the Fourth Amendment claim, the Due Process Clause claim rests on the wrong of detention." *See Lewis v. City of Chicago*, No. 17-1510 (Dkt. 44) (7th Cir. Sept. 28, 2018) (FRAP 28(j) filing by Appellant). Thus, a result in favor of the appellant in that matter would be consistent with the reasoning applied here.

Although the statute of limitations is an affirmative defense that need not be anticipated in the complaint to survive a motion to dismiss, *see United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005), in the instant case Smith has pled himself out of court by pleading facts that establish an impenetrable defense to his claim. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008). Because "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense" and nothing suggests that a tolling argument is somehow applicable, the Court dismisses the Fourth and Fourteenth Amendment claim as precluded by the statute of limitations. *Lewis*, 411 F.3d at 842; *see Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (granting motion to dismiss based on statute of limitations defense where the relevant dates were set forth unambiguously in the complaint); *see also Collins v. Vill. of Palatine, Ill.*, 875 F.3d 839, 842 (7th Cir. 2017) ("Although the statute of limitations is an affirmative defense, dismissal under Rule

12(b)(6) of the Federal Rules of Civil Procedure is appropriate if the complaint contains everything necessary to establish that the claim is untimely.").

   B.   § 1983 Conspiracy

For a § 1983 conspiracy claim, Smith must allege that "(1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1075 (N.D. Ill. 2018) (quoting *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015)). But as discussed above, Smith's claim for unlawful detention is untimely, and thus any claim for § 1983 conspiracy based on the same allegations necessarily fails.

   C.   *Monell* Claim

Smith's *Monell* claim against the City appears to be based on the "code of silence," and he alleges that the "code of silence" is a widespread practice or custom of the City that the City knows about and encourages. (Dkt. 1) at ¶¶ 12–13. As a municipality. the City is subject to § 1983 liability under *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978), "if the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (citing *Monell*, 436 U.S. at 690); *see Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017) (*en banc*) ("The critical question under *Monell* . . . is whether a municipal policy or custom gave rise to the harm (that is, caused it), or if instead the harm resulted from the acts of the entity's agents.").

Here again, because Smith's unlawful detention claim fails, so does his *Monell* claim. Even if he had stated a viable constitutional violation, his *Monell* claim would fail because it does not

plausibly allege that the "code of silence" caused his constitutional injury nor does he allege pervasive misconduct. With regard to causation, his "code of silence" allegations are brief and circular: the "code of silence" caused Officers Mitchell and Otero to do what they did because they acted pursuant to the "code of silence." (Dkt. 1) at ¶ 15. Moreover, even if Smith had properly alleged causation, his *Monell* claim still would fail because he has alleged only one isolated incident of misconduct. *See, e.g.*, *Carmona v. City of Chicago*, 2018 WL 1468995, at *2 (N.D. Ill. Mar. 26, 2018) (in determining whether a plaintiff has pled a widespread practice in a *Monell* claim, the court looks to the instances of misconduct alleged, the circumstances surrounding the alleged constitutional injury, and additional facts probative of a widespread practice or custom). In other words, his allegations about the existence of the "code of silence" are generally stated and his only specific allegation about the "code of silence" at play in this case is that Officers Mitchell and Otero acted pursuant to it. (Dkt. 1) at ¶¶ 12–15. These allegations do not lead to an inference of pervasive or widespread misconduct, either in fabricating evidence or ignoring misconduct.

## CONCLUSION

For the reasons outlined above, Defendants' Rule 12(e) motion is denied and Defendants' Rule 12(b)(6) motion is granted. (Dkt. 16). Smith's Complaint is dismissed with prejudice.

_____
Hon. Virginia M. Kendall
United States District Judge

Date: January 3, 2019