IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Keith Smith, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| -*vs*- ) | No. 18-cv-4918 |
| ) | |
| City of Chicago and Chicago ) | *(Judge Kendall)* |
| Police Officers Ranita Mitchell ) | |
| and Herman Otero, ) | |
| ) | |
| *Defendants*. ) | |

## PLAINTIFF'S MOTION TO RECONSIDER

In light of intervening decision of the Seventh Circuit in *Mitchell v. City of Elgin*, No. 16-1907, — F.3d —, 2019 WL 76881 (7th Cir. Jan. 2, 2019), plaintiff requests, under Federal Rule of Civil Procedure 59, that the Court vacate the judgment heretofore entered and reconsider its ruling on the motion to dismiss.

Grounds for this motion are as follows:

1. On January 2, 2019, after the motion to dismiss had been fully briefed, the Seventh Circuit decided *Mitchell v. City of Elgin*, No. 16-1907, — F.3d —, 2019 WL 76881 (7th Cir. Jan. 2, 2019).

2. As explained below, *Mitchell* constitutes an "intervening and substantial change in the controlling law since the submission of the issues to the court" that requires the Court to reconsider. *Prestone Prod. Corp. v.*

*S./Win, Ltd.*, No. 13 C 1853, 2014 WL 12775693, at *1 (N.D. Ill. Sept. 26, 2014).

3. Plaintiff's Fourth Amendment claim that he was unreasonably detained before trial is based on *Manuel v. City of Joliet* ("*Manuel I*"), 137 S. Ct. 911 (2017), in which the Supreme Court rejected the Seventh Circuit's rule that the Fourth Amendment "has no role to play after the initiation of formal legal process." *Mitchell*, 2019 WL 76881, at *2, slip op. 5.

4. The Supreme Court's opinion in *Manuel I* left open the question of when such a claim accrues.

5. In *Manuel v. City of Joliet* ("*Manuel II*"), 903 F.3d 667 (7th Cir. 2018), the Seventh Circuit held that a Fourth Amendment claim for unlawful pretrial detention accrues when the detention ends. *Id.* at 670.

6. The Seventh Circuit held in *Mitchell* that *Manuel II* did not reach the question of whether pretrial release on bond could constitute a Fourth Amendment "seizure." *Mitchell*, 2019 WL 76881, at *4-*5, slip op. 9-10. "The panel in *Manuel II* had no occasion to address the question because Elijah Manuel was held in jail until the charges against him were dropped." *Id.*

7. The *Mitchell* court also held that it could not decide the accrual question on the facts alleged in the complaint: "all we can say is that in light of *Manuel I*, Mitchell's Fourth Amendment claim was wrongly dismissed

based on our now-abrogated circuit caselaw." *Mitchell*, 2019 WL 76881, at *5, slip op. 10.

8. This Court, ruling without the benefit of *Mithcell*, rejected plaintiff's argument that his detention continued after he was released from Cook County Jail "because he remained seized before his trial because of his bond." (ECF No. 21 at 7.)

9. *Mitchell* requires that the Court reconsider its ruling dismissing plaintiff's Fourth Amendment claim.

10. The Court should also reconsider, in light of *Mitchell*, its ruling on the statute of limitations defense to plaintiff's due process claim. Plaintiff contends that he was deprived of liberty without due process of law because the defendants fabricated evidence against him and that this deprivation of liberty continued until the criminal case was terminated. Whether this claim is timely turns on the same factual issue that controls plaintiff's Fourth Amendment claim: whether the conditions of pretrial release amounted to a "seizure" or a "deprivation of liberty."

11. The Court's ruling dismissing plaintiff's conspiracy claim was dependent on its dismissal of the Fourth and Fourteenth Amendment claims. (ECF No. 37 at 14.) The Court should therefore reinstate this claim.

12. The Court dismissed plaintiff's *Monell* claim against the City of Chicago because it was dependent on the other claims and based on a ruling

that plaintiff failed to sufficiently plead causation and pervasive or widespread misconduct. (ECF No. 37 at 14-15.)

13. The Court should vacate its dismissal of the *Monell* claim for being dependent on the other claims and give plaintiff leave to amend his complaint to address the Court's alternative bases for dismissal. *See Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015) ("Ordinarily . . . a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed.").

14. In compliance with *Doe v. Village of Arlington Heights*, 782 F.3d 911, 919 (7th Cir. 2015), plaintiff tenders his proposed amended complaint as Exhibit 1.

The Court should therefore reconsider its ruling on the motion to dismiss, vacate the judgment, reinstate the case, and permit the filing of the attached proposed amended complaint.

             Respectfully submitted,

         /s/ <u>Joel A. Flaxman</u>
            Joel A. Flaxman
            ARDC No. 6292818
            Kenneth N. Flaxman
            200 S Michigan Ave Ste 201
            Chicago, IL 60604-2430
            (312) 427-3200
            *Attorneys for Plaintiff*

**Exhibit 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Keith Smith, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| -vs- | ) | No. 18-cv-4918 |
| | ) | |
| City of Chicago and Chicago | ) | *(Judge Kendall)* |
| Police Officers Ranita Mitchell | ) | |
| and Herman Otero, | ) | |
| | ) | |
| *Defendants*. | ) | |

## AMENDED COMPLAINT

Plaintiff files this amended complaint and, by counsel, alleges as follows:

1. This is a civil action arising under 42 U.S.C. § 1983. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343.

2. Plaintiff Keith Smith is a resident of the Northern District of Illinois.

3. Defendants Chicago Police Officers Ranita Mitchell and Herman Otero were, at all relevant times, acting under color of their offices as Chicago police officers.

4. Defendant City of Chicago is an Illinois municipal corporation.

5. On September 10, 2013, defendants Mitchell and Otero unlawfully stopped and searched a vehicle in which plaintiff was a passenger

and then arrested plaintiff. Plaintiff does not assert any claim of unlawful search, seizure, or false arrest.

6. Defendants Mitchell and Otero conspired, confederated, and agreed to frame plaintiff for criminal offenses to cover up their wrongful conduct.

7. In furtherance of this conspiracy, defendants Mitchell and Otero concocted the false story that they had observed plaintiff, while a passenger in an automobile, make a furtive movement.

8. Also in furtherance of this conspiracy, defendant Mitchell claimed to have found a bullet inside of the vehicle.

9. Defendants Mitchell and Otero put this fabricated story into official police reports and criminal complaints and communicated it to prosecutors.

10. As a result of the wrongful conduct of defendants, plaintiff was held in custody at the Cook County Jail for seven months before being released on bond in March 2014.

11. Plaintiff was exonerated at trial on July 21, 2016.

12. At all relevant times, the Chicago Police Department maintained a "code of silence" that required police officers to remain silent

about police misconduct. An officer who violated the code of silence would be severely penalized by the Department.

13. At all relevant times, police officers were trained at the Chicago Police Academy not to break the code of silence. Officers were instructed that "Blue is Blue. You stick together. If something occurs on the street that you don't think is proper, you go with the flow. And after that situation, if you have an issue with that officer or what happened, you can confront them. If you don't feel comfortable working with them anymore, you can go to the watch commander and request a new partner. But you never break the code of silence."

14. The United States Department of Justice made the following factual findings in its official report entitled "Investigation of the Chicago Police Department," January 13, 2017, at 75:

    a. "One way to cover up police misconduct is when officers affirmatively lie about it or intentionally omit material facts."

    b. "The Mayor has acknowledged that a 'code of silence' exists within CPD, and his opinion is shared by current officers and former high-level CPD officials interviewed during our investigation."

      c. "Indeed, in an interview made public in December 2016, the President of the police officer's union admitted to such a code of silence within CPD, saying 'there's a code of silence everywhere, everybody has it . . . so why would the [Chicago Police] be any different.'"

15. The United States Department of Justice also found that "a code of silence exists, and officers and community members know it." Report at 75.

16. In the case of *Obrycka v. City of Chicago et al.*, No. 07-cv-2372 (N.D. Ill.), a federal jury found that as of February 2007, "the City [of Chicago] had a widespread custom and/or practice of failing to investigate and/or discipline its officers and/or code of silence."

17. In December 2015, Chicago Mayor Rahm Emanuel acknowledged the continued existence of the code of silence within the Chicago Police Department; Emanuel, speaking in his capacity as Mayor, admitted that the code of silence leads to a culture where extreme acts of abuse are tolerated.

18. In April 2016, the City's Police Accountability Task Force found that the code of silence "is institutionalized and reinforced by CPD

rules and policies that are also baked into the labor agreements between the various police unions and the City."

19. The same code of silence in place during the time period at issue in the *Obrycka* case and recognized by the Mayor, the Task Force, and the Department of Justice was also in place when plaintiff suffered the wrongful conduct described above.

20. Chicago Police Officers acting pursuant to defendant City of Chicago's "code of silence" have concocted false stories and fabricated evidence in numerous other cases.

21. In each case, the officers concocted false stories and fabricated evidence because they reasonably believed that there would be no consequences for their misconduct because of defendant City of Chicago's "code of silence."

22. These numerous cases include, but are not limited to, the following:

> a. In November of 2010, Chicago Police Detectives Edward Heerdt and Lloyd Almdale caused Paul Myvett to be falsely prosecuted for a shooting based on fabricated evidence that witnesses had stated that Myvett was the shooter;

  b. In January of 2014, Chicago Police Officers, including Office John McCabe, caused David Purnell to be falsely prosecuted for gun possession based on fabricated evidence that the officers saw Purnell shooting a gun into the air;

  c. In December of 2014, Chicago Police Officer Terrence Norris caused Brandon Harbin to be falsely prosecuted for battery to a peace officer based on fabricated evidence that Harbin struck Officer Norris in the face; and

  d. In February of 2015, Chicago Police Officers Arthur Gorman, Nicholas Pronek, Salome Exclusa, and Kari Pfeifer caused Jermel Jackson to be falsely prosecuted for possessing a weapon based on fabricated evidence that a gun found in a police cruiser had been hidden in Jackson's boot.

23. Defendant City of Chicago's "code of silence" was another cause of the conduct of Defendants Mitchell and Otero.

24. Defendants Mitchell and Otero concocted their false story and fabricated evidence because they reasonably believed that there would be

-6-

no consequences for their misconduct because of defendant City of Chicago's "code of silence."

25. As a result of the foregoing, plaintiff was deprived of rights secured by the Fourth and Fourteenth Amendments.

26. Plaintiff hereby demands trial by jury.

Accordingly, plaintiff requests that appropriate compensatory and punitive damages be awarded against defendants Mitchell and Otero, that appropriate compensatory damages only be awarded against defendant City of Chicago, and that the Court grant reasonable fees and costs.

/s/ Kenneth N. Flaxman
KENNETH N. FLAXMAN
ARDC No. 830399
Joel A. Flaxman
200 S Michigan Ave Ste 201
Chicago, IL 60604-2430
(312) 427-3200
*Attorneys for Plaintiff*