IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Keith Smith, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | No. 18-cv-4918 |
| | ) | |
| City of Chicago and Chicago | ) | *(Judge Kendall)* |
| Police Officers Ranita Mitchell | ) | |
| and Herman Otero, | ) | |
| | ) | |
| Defendants. | ) | |

## SECOND AMENDED COMPLAINT

Plaintiff files this second amended complaint and, by counsel, alleges as follows:

1. This is a civil action arising under 42 U.S.C. § 1983. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343.

2. Plaintiff Keith Smith is a resident of the Northern District of Illinois.

3. Defendants Chicago Police Officers Ranita Mitchell and Herman Otero were, at all relevant times, acting under color of their offices as Chicago police officers.

4. Defendant City of Chicago is an Illinois municipal corporation.

5. On September 10, 2013, defendants Mitchell and Otero unlawfully stopped and searched a vehicle in which plaintiff was a passenger

and then arrested plaintiff. Plaintiff does not assert any claim of unlawful search, seizure, or false arrest.

6. Defendants Mitchell and Otero conspired, confederated, and agreed to frame plaintiff for criminal offenses.

7. In furtherance of this conspiracy, defendants Mitchell and Otero concocted the false story that they had observed plaintiff, while a passenger in an automobile, make a furtive movement.

8. Also in furtherance of this conspiracy, defendant Mitchell claimed to have found a bullet inside the vehicle.

9. Defendants Mitchell and Otero memorialized this fabricated story in official police reports and criminal complaints and communicated the fabricated story to prosecutors.

10. As a result of the wrongful conduct of defendants, plaintiff was held in custody at the Cook County Jail for seven months before being released on bond on or about March 29, 2014.

11. Following his release on bond, plaintiff was required to appear in court at the state's command, about once per month.

12. While on bond, plaintiff was subject to the condition that he seek formal permission from the court before exercising what would

otherwise have been his unquestioned right to travel outside the State of Illinois.

13. While on bond, plaintiff's employment prospects were diminished because he had to appear in court about once each month.

14. While on bond, plaintiff experienced the financial and emotional strain of preparing a defense.

15. The criminal proceedings against plaintiff terminated in his favor on July 21, 2016, when he was found not guilty.

16. At all relevant times, the Chicago Police Department maintained official policies and customs that facilitated and condoned fabricating evidence against arrestees.

17. At all relevant times, the Chicago Police Department maintained a policy or custom of failing to discipline, supervise, and control its officers. By maintaining this policy or custom, the City caused its officers to believe that they could engage in misconduct with impunity because their actions would never be thoroughly scrutinized.

18. Before plaintiff's arrest, policymakers for the City of Chicago knew that the Chicago Police Department's policies or customs for disciplining, supervising, and controlling its officers were inadequate and caused police misconduct.

19. Despite their knowledge of the City's failed policies and customs for disciplining, supervising, and controlling its officers, the policymakers failed to take action to remedy these problems.

20. At all relevant times, the Chicago Police Department maintained a "code of silence" that required police officers to remain silent about police misconduct. An officer who violated the code of silence would be severely penalized by the Department.

21. At all relevant times, police officers were trained at the Chicago Police Academy not to break the code of silence. Officers were instructed that "Blue is Blue. You stick together. If something occurs on the street that you don't think is proper, you go with the flow. And after that situation, if you have an issue with that officer or what happened, you can confront them. If you don't feel comfortable working with them anymore, you can go to the watch commander and request a new partner. But you never break the code of silence."

22. As a direct result of the "code of silence," Chicago police officers have concocted false stories and fabricated evidence in numerous cases because they reasonably believed that there would be no consequences for their misconduct.

23. These numerous cases include, but are not limited to, the following:

    a. In November of 2010, Chicago Police Detectives Edward Heerdt and Lloyd Almdale caused Paul Myvett to be falsely prosecuted for a shooting based on fabricated evidence that witnesses had stated that Myvett was the shooter;

    b. In January of 2014, Chicago Police Officers, including Office John McCabe, caused David Purnell to be falsely prosecuted for gun possession based on fabricated evidence that the officers saw Purnell shooting a gun into the air;

    c. In December of 2014, Chicago Police Officer Terrence Norris caused Brandon Harbin to be falsely prosecuted for battery to a peace officer based on fabricated evidence that Harbin struck Officer Norris in the face; and

    d. In February of 2015, Chicago Police Officers Arthur Gorman, Nicholas Pronek, Salome Exclusa, and Kari Pfeifer caused Jermel Jackson to be falsely prosecuted

for possessing a weapon based on fabricated evidence that a gun found in a police cruiser had been hidden in Jackson's boot.

24. In the case of *Obrycka v. City of Chicago et al.*, No. 07-cv-2372 (N.D. Ill.), a federal jury found that as of February 2007, "the City [of Chicago] had a widespread custom and/or practice of failing to investigate and/or discipline its officers and/or code of silence."

25. In December 2015, Chicago Mayor Rahm Emanuel acknowledged the continued existence of the code of silence within the Chicago Police Department; Emanuel, speaking in his capacity as Mayor, admitted that the code of silence leads to a culture where extreme acts of abuse are tolerated.

26. In April 2016, the City's Police Accountability Task Force found that the code of silence "is institutionalized and reinforced by CPD rules and policies that are also baked into the labor agreements between the various police unions and the City."

27. In an official government report issued in January 2017, the United States Department of Justice found that "a code of silence exists, and officers and community members know it."

28. On March 29, 2019, Chicago Police Superintendent Eddie Johnson publicly acknowledged the code of silence, stating that some Chicago Police officers "look the other way" when they observe misconduct by other Chicago Police officers.

29. The same code of silence in place during the time period at issue in the *Obrycka* case and recognized by the Mayor, the Task Force, the Department of Justice, and Superintendent Johnson was also in place when plaintiff was subjected to an unreasonable seizure from his arrest until he was found not guilty on July 21, 2016.

30. Defendant City of Chicago's "code of silence" was another cause of the conduct of Defendants Mitchell and Otero.

31. Defendants Mitchell and Otero concocted their false story and fabricated evidence because they reasonably believed that there would be no consequences for their misconduct because of defendant City of Chicago's "code of silence."

32. As a result of the foregoing, plaintiff was deprived of rights secured by the Fourth Amendment to the Constitution of the United States.

33. Plaintiff hereby demands trial by jury.

Accordingly, plaintiff requests that appropriate compensatory and punitive damages be awarded against defendants Mitchell and Otero, that

appropriate compensatory damages only be awarded against defendant City of Chicago, and that the Court grant reasonable fees and costs.

                                        /s/  <u>Kenneth N. Flaxman</u>
                                             KENNETH N. FLAXMAN
                                             ARDC No. 830399
                                             Joel A. Flaxman
                                             200 S Michigan Ave Ste 201
                                             Chicago, IL 60604-2430
                                             (312) 427-3200
                                             *Attorneys for Plaintiff*