IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEITH SMITH,<br><br>*Plaintiff,*<br><br>v.<br><br>CITY OF CHICAGO, OFFICER RANITA MITCHELL, and OFFICER HERMAN OTERO,<br><br>*Defendants.* | No. 18 C 4918<br><br>Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

After the Court granted his Motion to Reconsider (Dkt. 39), Plaintiff Keith Smith timely filed his Amended Complaint[1]. The Amended Complaint brings claims of fabricated evidence and conspiracy, along with a *Monell* claim against the City of Chicago pursuant to 42 U.S.C. § 1983. (Dkt. 45). The fundamental question before the Court is whether Plaintiff's conditions of bond were so substantial as to be considered a seizure, thus prolonging the accrual date of for his constitutional claims. After review of Plaintiff's newly pled allegations, the conditions of bond Plaintiff was subjected to were not sufficiently burdensome to be considered a seizure. The controlling statute of limitations expired in March of 2016, two years after he was

---

[1] Plaintiff titled his Amended Complaint as "Second Amended Complaint" when filing on the Court's docket. (Dkt. 45). Seeing as this is the first time Plaintiff has amended his complaint, the Court will refer to the operative pleading as the Amended Complaint throughout this Opinion.

released from Cook County Jail. Accordingly, Defendants' Motion to Dismiss is granted and Plaintiff's Amended Complaint is dismissed with prejudice.

## BACKGROUND

The Court is well aware of, and assumes familiarity with, the facts alleged in Plaintiff's Complaint and his Amended Complaint based upon the Court's ruling on the first motion to dismiss (Dkt. 37) and Plaintiff's subsequent motion to reconsider (Dkt. 44). The well pleaded facts in Plaintiff's Amended Complaint are presumed as true for purposes of reviewing the instant Motion to Dismiss. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555-56 (2007).

Briefly, Plaintiff was a passenger in a vehicle that Defendants Mitchell and Otero stopped and searched on September 10, 2013. (Dkt. 45, ¶ 5). Plaintiff was arrested as a result, but "does not assert any claim of unlawful search, seizure, or false arrest." *Id*. Plaintiff alleges that Defendants Mitchell and Otero conspired to produce a fabricated police report which led to Plaintiff's detention in Cook County Jail for seven months. (*Id*. at ¶¶ 6-10). Plaintiff was released on bond on March 29, 2014 and was required to appear at court hearings and seek permission from the court before leaving Illinois. (*Id*. at ¶¶ 10-12).

On July 21, 2016, Plaintiff was found not guilty. (*Id*. at ¶ 15). Plaintiff then filed his original complaint on July 18, 2018. (Dkt. 1). This Court dismissed Plaintiff's complaint as barred by the two-year statute of limitations because his claim for unlawful detention accrued at the time he was released from custody on March 29, 2014. (Dkt. 37). Following the Court's ruling, Plaintiff filed a motion to

reconsider based on the potential intervening authority of *Mitchell v. City of Elgin,* 912 F.3d 1012 (7th Cir. 2019). The *Mitchell* court wrote that conditions of bond *could* potentially constitute a continuing seizure. However, the exact parameters of Mitchell's bond were not before the court so the matter was remanded for further fact-finding. *Mitchell,* 912 F.3d at 1017. As was the case with *Mitchell,* the conditions of bond were not before this Court at the time it ruled on Defendants' first motion to dismiss. Therefore, Plaintiff's motion to reconsider was granted and Plaintiff was permitted to file an amended complaint alleging the conditions of bond. (Dkt. 44).

Plaintiff filed his Amended Complaint on May 27, 2019 with new allegations detailing the conditions of his bond. Specifically, Plaintiff alleges that while on bond, he "was required to appear in court at the state's command, about once per month," "was subject to the condition that he seek formal permission from the court before exercising what would otherwise have been his unquestioned right to travel outside the State of Illinois," "experienced the financial and emotional strain of preparing a defense," and suffered from diminished employment prospects "because he had to appear in court about once each month." (Dkt. 45, ¶¶ 11-14).

## **LEGAL STANDARD**

To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(internal quotations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id*. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Olson v. Champaign Cty., Ill.*, 784 F.3d 1093, 1099 (7th Cir. 2015) (quoting *Twombly,* 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 734 (7th Cir. 2017) (citing *Iqbal,* 556 U.S. at 678.). "[W]hen the allegations of the complaint reveal that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim." *Logan v. Wilkins,* 644 F.3d 577, 582 (7th Cir. 2011).

## DISCUSSION
### I. Fabrication of Evidence Claim

Plaintiff brings his claims pursuant to 42 U.S.C. § 1983. Specifically, Plaintiff argues that Defendants violated his Fourth Amendment rights when they fabricated evidence which led to his wrongful pretrial detention. "[T]here *is* a constitutional right not to be held in custody without probable cause." *Manuel v. City of Joliet, Illinois,* 903 F.3d 667, 670 (7th Cir. 2018), *cert. denied sub nom. City of Joliet, Ill. v. Manuel,* 139 S. Ct. 2777 (2019) (emphasis in original). That right is grounded in the Fourth Amendment. *Manuel v. City of Joliet, Ill.,* 137 S. Ct. 911, 920 (2017). "[A] Fourth Amendment claim for unlawful pretrial detention accrues when the *detention* ends, *not* when the *prosecution* ends." *Mitchell,* 912 F.3d at 1015 (emphasis in original). Once a claim accrues, plaintiffs have two years to seek relief. *Gekas v. Vasiliades,* 814 F.3d 890, 894 (7th Cir. 2016) ("The statute of limitations for § 1983 claims in Illinois is two years.").

There is no dispute that Plaintiff was released from the Cook County Jail on bond in March of 2014. However, Plaintiff argues that his wrongful detention did not end until he was acquitted on July 21, 2016—making the July 18, 2018 filing of his Complaint timely. He posits that the conditions of his bond amounted to a seizure and wrongful detention. The dispositive question is whether Plaintiff's conditions of bond constitute a seizure and necessarily delay the accrual of his Fourth Amendment claims.

Here, Plaintiff alleges just two conditions of his bond.[2] First, that he "was required to appear in court at the state's command, about once per month." (Dkt. 45, ¶ 11). And second, that he had to seek permission to leave the State of Illinois. (*Id.* at ¶ 12). These allegations, neither independently nor cumulatively, do not amount to a seizure. Elevating these bond conditions to the level of a Fourth Amendment seizure would fundamentally alter the understanding and structure of the pretrial system. *Bielanski v. Cty. of Kane,* 550 F.3d 632, 642 (7th Cir. 2008) ("To hold otherwise would transform every traffic ticket and jury summons into a potential Section 1983 claim."); *see also Mitchell,* 912 F.3d at 1017 ("We have misgivings about construing a simple obligation to appear in court—a uniform condition of any pretrial release—as a 'seizure' for Fourth Amendment purposes. Converting every traffic ticket into a nascent Fourth Amendment claim strikes us as an aggressive reading of

---

[2] It is worth noting that Plaintiff also alleges that he suffered diminished employment prospects because he had to appear at monthly court hearings and suffered financial and emotional strain in having to prepare. These burdens are de minimis and not unique to individuals on pretrial detention, nor are they conditions of bond imposed by court order. Indeed, any defendant may suffer some sort of mental and emotional anxiety at the prospect of defending a case, but this is not inherently the result of conditions of bond.

the constitutional text."). In fact, the very conditions that Plaintiff now alleges have already been classified as insufficient to establish a Fourth Amendment seizure. "No court has held that a summons alone constitutes a seizure, and we conclude that a summons alone does not equal a seizure for Fourth Amendment purposes. … Although the travel restriction and the interview with the probation officer might be somewhat more onerous than the summons alone, we conclude that they are insufficient restraints on freedom of movement to constitute a seizure." *Id.* With respect to the Plaintiff's confinement to the State of Illinois, the mere threat of a travel restriction is inadequate. "Such a requirement is, at most, a precursor to a possible seizure rather than a seizure itself." *Id.* Nowhere does Plaintiff allege he was ever actually denied permission to leave the state or that his obligation to attend a court hearing imposed a direct and specific hardship.

In order to reach the threshold of a Fourth Amendment violation, conditions of pretrial release must "impose *significant restrictions* on liberty." *Mitchell,* 912 F.3d at 1016 (emphasis added). Requiring Plaintiff to attend monthly court hearings and asking for permission to leave the state falls far short of that benchmark. *See e.g., Spring-Weber v. City of Chicago,* 2018 WL 4616357, at *12 (N.D. Ill. Sept. 26, 2018) ("Nor is there a seizure every time the government compels a person to be in a particular place. For instance, service of a summons to appear in court—even though it is backed by a court's power to hold the recipient in contempt and imprison her if she does not comply—does not amount to a seizure within the meaning of the Fourth Amendment."). Seizure concerns are simply not implicated with such minor and

routine restrictions are imposed on an individual's liberty. The primary focus is on physical detention or other conditions of near equivalent severity. *See e.g., Allen v. Utreras,* 2018 WL 8261309, at *1 (N.D. Ill. Nov. 9, 2018) ("[T]he Seventh Circuit was not concerned with the lesser freedom restrictions imposed on a person released on his own recognizance, but specifically with detention itself."); *Mayo v. LaSalle Cty.,* 2019 WL 3202809, at *5 (N.D. Ill. July 15, 2019) ("A requirement to appear somewhere simply does not fit within the Supreme Court's test for whether a seizure has occurred, which looks to whether a reasonable person would have believed he was free to leave. … Accordingly, the clock on [Plaintiffs'] pretrial detention claim started running when they were released from physical custody…").

Plaintiff suggests that the Supreme Court's recent decision in *McDonough v. Smith* has already resolved the accrual question and that in line with that ruling, his claims did not accrue until the criminal proceedings terminated in his favor. That is not the case as *McDonough* is meaningfully distinguishable. In *McDonough,* the plaintiff's fabricated evidence claim arose under the Due Process Clause of the Fourteenth Amendment. 139 S. Ct. 2149, 2155 (2019). Importantly, the purportedly fabricated evidence *was* used against McDonough at his trial. *Id.* at 2154. Here, Plaintiff's claim is explicitly brought under the Fourth Amendment and the allegedly fabricated evidence was *not* used against him at trial. As the Supreme Court highlighted, the Fourth and Fourteenth Amendments are fundamentally concerned with protecting distinct interests.

> [O]nce a trial has occurred, the Fourth Amendment drops out: A person challenging the sufficiency of the evidence to support both a conviction

> and any ensuing incarceration does so under the Due Process Clause of the Fourteenth Amendment. … [T]he Framers drafted the Fourth Amendment to address the matter of pretrial deprivations of liberty … and the Amendment thus provides standards and procedures for the detention of suspects *pending trial.*

*Manuel,* 137 S.Ct. at 919 n.8 (internal quotations and citations omitted). Plaintiff challenges the fabrication of evidence that led to his pretrial detention—not any deprivation of liberty stemming from evidence presented at trial. Accordingly, the Due Process Clause, and in turn *McDonough*, have no bearing when analyzing the accrual date of Plaintiff's claims. *See Manuel,* 903 F.3d at 670.

Additionally, Plaintiff asks the Court to take notice of the pending en banc hearing before the Seventh Circuit in *Savory v. Cannon.* (Dkt. 56). A review of *Savory* reveals that it is similarly distinguishable and does not justify a different result or that the Court must wait on the sidelines pending the outcome of the hearing. The plaintiff in *Savory* did not bring a Fourth Amendment fabrication of evidence claim. Instead, he brought claims of malicious prosecution, challenging the fabricated evidence *used at his trial. Savory v. Cannon,* 912 F.3d 1030, 1032 (7th Cir. 2019), *reh'g en banc granted, opinion vacated* (Mar. 6, 2019). The issue of when a Fourth Amendment claim for fabrication of evidence accrues was not before the Seventh Circuit when it rendered its initial opinion and there is no indication that it will be addressed at the en banc hearing. *Savory* is of no consequence for purposes of analyzing Plaintiff's claims here. What the Seventh Circuit *has* clearly addressed is that a claim like Plaintiff's accrues when the detention ends, not when the prosecution is complete, *Mitchell,* 912 F.3d at 1015, and minor restrictions such as

requirements to attend court hearings and seeking permission before leaving the state do not extend detention for purposes of a Fourth Amendment claim. *Bielanski,* 550 F.3d at 642.

**II. Conspiracy and *Monell* Claims**

Because Plaintiff's individual fabrication of evidence claim fails as untimely, so too must his corresponding conspiracy and *Monell* claims. Plaintiff agrees that the success or failure of his conspiracy and *Monell* claims are intertwined with the standalone fabrication of evidence claim. (Dkt. 50, pg. 5). In the absence of any substantive constitutional violation, a conspiracy claim necessarily fails. *Cefalu v. Vill. of Elk Grove,* 211 F.3d 416, 423 (7th Cir. 2000). Similarly, the untimeliness of the fabrication claim forecloses Plaintiff's ability to pursue his *Monell* claim. *Sallenger v. City of Springfield, Ill.,* 630 F.3d 499, 504 (7th Cir. 2010) ("But a municipality cannot be liable under *Monell* when there is no underlying constitutional violation by a municipal employee."). Thus, both are dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is granted. Plaintiff's claims accrued when he was released from custody in March of 2014. As a result, this action, filed more than four years after his release, is untimely pursuant to the two year statute of limitations. Plaintiff's Amended Complaint is dismissed with prejudice.

                                                                _____
                                                                Virginia M. Kendall
                                                                United States District Judge
Date: September 6, 2019