IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Keith Smith, | ) | |
| | ) | |
| Plaintiff. | ) | Case No.: 18-cv-4918 |
| | ) | |
| v. | ) | Honorable Judge Virginia M. Kendall |
| | ) | |
| City of Chicago and Chicago Police Officers Ranita Mitchell and Herman Otero, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**INDIVIDUAL DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES AND JURY DEMAND**

Defendants, Ranita Mitchell and Herman Otero, by and through their attorneys, Nikoleta Lamprinakos and Jared D. Michael of Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., and for their Answer to Plaintiff's Second Amended Complaint states as follows:

1. This is a civil action arising under 42 U.S.C. § 1983. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343.

**Answer:** Defendants Mitchell and Otero admit that Plaintiff purports to bring this action for money damages pursuant to 42 U.S.C. § 1983 and admit that jurisdiction is proper.

2. Plaintiff Keith Smith is a resident of the Northern District of Illinois.

**Answer:** Defendants Mitchell and Otero lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 2.

3. Defendants Chicago Police Officers Ranita Mitchell and Herman Otero were, at all relevant times, acting under color of their offices as Chicago police officers.

**Answer:** Defendants Mitchell and Otero admit that, at all relevant times hereto, they were

employed by the City of Chicago as Police Officers and acting within the scope of their employment and under color of law.

   4.  Defendant City of Chicago is an Illinois municipal corporation.

**Answer:**  Defendants Mitchell and Otero admit the allegations contained in Paragraph 4.

   5.  On September 10, 2013, defendants Mitchell and Otero unlawfully stopped and searched a vehicle in which Plaintiff was a passenger and then arrested plaintiff. Plaintiff does not assert any claim of unlawful search, seizure, or false arrest.

**Answer:**  Defendants Mitchell and Otero admit that on September 10, 2013 they stopped and searched a vehicle in which Plaintiff was a passenger and then arrested Plaintiff. Defendants Mitchell and Otero admit that Plaintiff does not purport to assert any claim of unlawful search, seizure or false arrest. Defendants Mitchell and Otero deny the remaining allegations contained in this paragraph.

   6.  Defendants Mitchell and Otero conspired, confederated, and agreed to frame Plaintiff for criminal offenses.

**Answer:**  Defendants Mitchell and Otero deny the allegations contained in Paragraph 6.

   7.  In furtherance of this conspiracy, defendants Mitchell and Otero concocted the false story that they had observed plaintiff, while a passenger in an automobile, make a furtive movement.

**Answer:**  Defendants Mitchell and Otero admit that they observed Plaintiff, while he was a passenger in an automobile, make a furtive movement, but deny the remaining allegations contained in Paragraph 7.

   8.  Also, in furtherance of this conspiracy, defendant Mitchell claimed to have found a bullet inside the vehicle.

**Answer:** Defendant Mitchell, and Defendant Otero upon information and belief, admit that Defendant Mitchell observed a bullet inside the vehicle but deny the remaining allegations contained in Paragraph 8.

9. Defendants Mitchell and Otero memorialized this fabricated story in official police reports and criminal complaints and communicated the fabricated story to prosecutors.

**Answer:** Defendants Mitchell and Otero admit that they drafted police reports documenting the incident but deny the remaining allegations contained in Paragraph 9.

10. As a result of the wrongful conduct of defendants, Plaintiff was held in custody at the Cook County Jail for seven months before being released on bond on or about March 29, 2014.

**Answer:** Defendants Mitchell and Otero deny the allegations contained in Paragraph 10.

11. Following his release on bond, Plaintiff was required to appear in court at the state's command, about once per month.

**Answer:** Defendants Mitchell and Otero lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 11.

12. While on bond, Plaintiff was subject to the condition that he seek formal permission from the court before exercising what would otherwise have been his unquestioned right to travel outside the State of Illinois.

**Answer:** Defendants Mitchell and Otero lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12.

13. While on bond, Plaintiff's employment prospects were diminished because he had to appear in court about once each month.

**Answer:** Defendants Mitchell and Otero lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13.

14. While on bond, Plaintiff experienced the financial and emotional strain of preparing a defense.

**Answer:** Defendants Mitchell and Otero lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14.

15. The criminal proceedings against Plaintiff terminated in his favor on July 21, 2016, when he was found not guilty.

**Answer:** Defendants Mitchell and Otero admit that Plaintiff was found not guilty on July 21, 2016 but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 15.

16. At all relevant times, the Chicago Police Department maintained official policies and customs that facilitated and condoned fabricating evidence against arrestees.

**Answer:** Defendants Mitchell and Otero deny the allegations contained in Paragraph 16.

17. At all relevant times, the Chicago Police Department maintained a policy or custom of failing to discipline, supervise, and control its officers. By maintaining this policy or custom, the City caused its officers to believe that they could engage in misconduct with impunity because their actions would never be thoroughly scrutinized.

**Answer:** Defendants Mitchell and Otero deny the allegations contained in Paragraph 17.

18. Before Plaintiff's arrest, policymakers for the City of Chicago knew that the Chicago Police Department's policies or customs for disciplining, supervising, and controlling its officers were inadequate and caused police misconduct.

**Answer:** Defendants Mitchell and Otero deny that the Chicago Police Department's policies or customs for disciplining, supervising, and controlling its officers were inadequate and caused police misconduct and lack knowledge or information sufficient to form a belief as to the truth of

the remaining allegations in contained Paragraph 18.

19. Despite their knowledge of the City's failed policies and customs for disciplining, supervising, and controlling its officers, the policymakers failed to take action to remedy these problems.

**Answer:** Defendants Mitchell and Otero deny that the Chicago Police Department's policies or customs for disciplining, supervising, and controlling its officers were inadequate and caused police misconduct and lack knowledge or information sufficient to form a belief as to the truth of the allegations in contained Paragraph 19.

20. At all relevant times, the Chicago Police Department maintained a "code of silence" that required police officers to remain silent about police misconduct. An officer who violated the code of silence would be severely penalized by the Department.

**Answer:** Defendants Mitchell and Otero deny the allegations contained in Paragraph 20.

21. At all relevant times, police officers were trained at the Chicago Police Academy not to break the code of silence. Officers were instructed that "Blue is Blue. You stick together. If something occurs on the street that you don't think is proper, you go with the flow. And after that situation, if you have an issue with that officer or what happened, you can confront them. If you don't feel comfortable working with them anymore, you can go to the watch commander and request a new partner. But you never break the code of silence."

**Answer:** Defendants Mitchell and Otero deny the allegations contained in Paragraph 21.

22. As a direct result of the "code of silence," Chicago police officers have concocted false stories and fabricated evidence in numerous cases because they reasonably believed that there would be no consequences for their misconduct.

**Answer:** Defendants Mitchell and Otero deny that they concocted a false story, deny they

fabricated evidence against Plaintiff, and therefore deny that any "code of silence" resulted in the same. Defendants Mitchell and Otero deny that they have ever seen, known of, or encountered Chicago police officers engaging in any "code of silence" type conduct alleged herein, which includes concocting false stories or fabricating evidence.

23. These numerous cases include, but are not limited to, the following:

    a. In November of 2010, Chicago Police Detectives Edward Heerdt and Lloyd Almdale caused Paul Myvett to be falsely prosecuted for a shooting based on fabricated evidence that witnesses had stated that Myvett was the shooter;

    b. In January of 2014, Chicago Police Officers, including Office John McCabe, caused David Purnell to be falsely prosecuted for gun possession based on fabricated evidence that the officers saw Purnell shooting a gun into the air;

    c. In December of 2014, Chicago Police Officer Terrence Norris caused Brandon Harbin to be falsely prosecuted for battery to a peace officer based on fabricated evidence that Harbin struck Officer Norris in the face; and

    d. In February of 2015, Chicago Police Officers Arthur Gorman, Nicholas Pronek, Salome Exclusa, and Kari Pfeifer caused Jermel Jackson to be falsely prosecuted for possessing a weapon based on fabricated evidence that a gun found in a police cruiser had been hidden in Jackson's boot.

**Answer:** Defendants Mitchell and Otero lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23 including subparagraphs (a) through (d).

24. In the case of *Obrycka v. City of Chicago et al.*, No. 07-cv-2372 (N.D. Ill.), a federal jury found that as of February 2007, "the City [of Chicago] had a widespread custom and/or practice of failing to investigate and/or discipline its officers and/or code of silence."

**Answer:** Defendants Mitchell and Otero lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24 and therefore deny the same.

25. In December 2015, Chicago Mayor Rahm Emanuel acknowledged the continued existence of the code of silence within the Chicago Police Department; Emanuel, speaking in his

6

capacity as Mayor, admitted that the code of silence leads to a culture where extreme acts of abuse are tolerated.

**Answer:** Defendants Mitchell and Otero lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 25.

26. In April 2016, the City's Police Accountability Task Force found that the code of silence "is institutionalized and reinforced by CPD rules and policies that are also baked into the labor agreements between the various police unions and the City."

**Answer:** Defendants Mitchell and Otero lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 26.

27. In an official government report issued in January 2017, the United States Department of Justice found that "a code of silence exists, and officers and community members know it."

**Answer:** Defendants Mitchell and Otero lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 27.

28. On March 29, 2019, Chicago Police Superintendent Eddie Johnson publicly acknowledged the code of silence, stating that some Chicago Police officers "look the other way" when they observe misconduct by other Chicago Police officers.

**Answer:** Defendants Mitchell and Otero lack knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 28.

29. The same code of silence in place during the time period at issue in the *Obrycka* case and recognized by the Mayor, the Task Force, the Department of Justice, and Superintendent Johnson was also in place when plaintiff was subjected to an unreasonable seizure from his arrest until he was found not guilty on July 21, 2016.

**Answer:** Defendants Mitchell and Otero deny the allegations contained in Paragraph 29.

30. Defendant City of Chicago's "code of silence" was another cause of the conduct of Defendants Mitchell and Otero.

**Answer:** Defendants Mitchell and Otero deny the existence of a "code of silence" and deny the allegations contained in Paragraph 30.

31. Defendants Mitchell and Otero concocted their false story and fabricated evidence because they reasonably believed that there would be no consequences for their misconduct because of defendant City of Chicago's "code of silence."

**Answer:** Defendants Mitchell and Otero deny the allegations contained in Paragraph 31 and deny any allegation of wrongdoing or other misconduct alleged herein.

32. As a result of the foregoing, plaintiff was deprived of rights secured by the Fourth Amendment to the Constitution of the United States.

**Answer:** Defendants Mitchell and Otero deny the allegations contained in Paragraph 32 and deny any allegation of wrongdoing or other misconduct alleged herein.

33. Plaintiff hereby demands trial by jury.

**Answer:** Defendants Mitchell and Otero admit that Plaintiff purports to demand a trial by jury in this matter.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Defendants Mitchell and Otero are entitled to qualified immunity for their alleged conduct because it was not clearly established that their actions violated Plaintiff's constitutional rights. A reasonably competent police officer, objectively viewing the facts and circumstances then confronting Defendants Mitchell and Otero, could have believed the actions taken by the officers

were objectively reasonable and were within constitutional limits that were clearly established at the time.

### Second Affirmative Defense

Plaintiff has a duty to mitigate his damages, and any damages awarded to Plaintiff would be required to be reduced by any amount by which the damages could have been lessened but were not, due to Plaintiff's failure to take reasonable action to minimize those damages.

### Third Affirmative Defense

Defendants cannot be held liable for Plaintiff's 42 U.S.C. § 1983 claims unless he individually caused or participated in an alleged constitutional deprivation because individual liability for damages under 42 U.S.C. § 1983 is predicated upon personal responsibility. See Wolf-Lillie v. Sonquist, 699 F.2d 864, 869 (7th Cir. 1983).

### Fourth Affirmative Defense

Defendants are absolutely immune from civil liability for any claim that they committed, or conspired to commit, perjury in the course of their testimony during the judicial proceedings in Plaintiff's underlying criminal case. Briscoe v. LaHue, 460 U.S. 325, 330-331 (1983); Rehberg v. Paulk, 132 S.Ct. 1497 (2012); see also Khorrami v. Rolince, 539 F.3d 782, 789 (7th Cir. 2008) (noting that the Seventh Circuit has recognized that absolute immunity extends to police officer's participation in pretrial proceedings).

### Fifth Affirmative Defense

To the extent Plaintiff failed to mitigate any of his claimed injuries or damages, any verdict or judgment obtained by him must be reduced by application of the principle that he had a duty to mitigate damages, commensurate with the degree of failure to mitigate attributed to him by the jury in the case.

## JURY DEMAND

Defendants, RANITA MITCHELL and HERMAN OTERO, hereby demand trial by jury for all issues and claims raised in this Complaint.

Respectfully Submitted,

CHICAGO POLICE OFFICERS,
RANITA MITCHELL and
HERMAN OTERO

By: \_/s/ Nikoleta Lamprinakos_____
     One of Attorneys for Defendants

Nikoleta Lamprinakos (6274018) nlamprinakos@robbins-schwartz.com
Jared D. Michael (6338164) jmichael@robbins-schwartz.com
Special Assistant Corporation Counsel
ROBBINS SCHWARTZ NICHOLAS
    LIFTON & TAYLOR, LTD.
55 W. Monroe St., Suite 800
Chicago, IL 60603
P: (312) 332-7760
F: (312) 332-7768

## CERTIFICATE OF SERVICE BY ELECTRONIC MAILING

      I hereby certify that I electronically filed the foregoing **Defendants' Answer to Second Amended Complaint** with the Clerk of the Court using the CM/ECF system on December 27, 2022, which constitutes service all counsel of record, registered filing users, pursuant to Fed. R. Civ. P. 5(b)(2)(D) and L.R. 5.9.

                                                           /s/ Nikoleta Lamprinakos
                                                           One of Attorneys for Defendants